See, so our next case for argument is Durment v. Burlington and Endurance American Specialty Insurance Company. Are you ready? Yes, your honor. Okay, Mr. Ford, I believe, represents the appellant. I'm representing the appellants, Mark Durment and Min Adora. May it please the court, I'd like to reserve four minutes for research as needed. Here in this diversity action, the court... Mr. Ford, for some reason you're fading out just a bit. All right, the volume is not adequate. Maybe you should stay closer to your mic. All right. Can you hear me now, your honor? Yes. All right. The state law issue of first impression has to do with where a liability insurer is in duty to defend and where the insured, as he or she or it is entitled to do, reasonably settles the action, including an assignment with a covenant not to execute. Under that circumstance, is the court obligated to prove that the settlement is covered as might be the case applying an intended incentive? Now, the court has almost 200 pages of briefing and respectfully to the insurers, their argument reduces to the defense of dictum. That's 85 years old, intermediate state to lamb versus casualty, which is at the centerpiece of their defense. On the other hand, the appellants would point... I would do this in the 13 or actually the 10 minutes of my opening. The first thing I would point to for the court would be very important pronouncements by the so famous and doctrinal that you've undoubtedly applied it many times from your benches. The second case that I think is that I'd like to discuss is Buss versus Superior Court. The third case I'd like to discuss very briefly is certain underwriters versus Superior Court. In those cases, the California Supreme Court, in our view, made it crystal clear that coverage is not still open, but it's in fact closed. And in fact, when the Supreme Court closed the court, it pretty much slammed the door. The second area that I would like to go into would be Getty's case and the Hogan case. These are collateral estoppel cases that are relied upon by our friends for the insurers. I'd like to point out a couple of things here. Finally, I'll be addressing two cases that have followed Gray and why we think they're so important. Certain underwriters, Hogan, Getty's, these cases were authored by a brilliant jurist, the late Justice Mott. I mention this not because he was a brilliant jurist, which he was, but because the court spoke with one brain and one voice for so many years, and it's not possible to argue that the court somehow didn't understand its own rulings or lost its way in a sense of history, which it didn't do. Starting with Gray, there really are two things about Gray versus Zurich, which is very important. First, when Gray came along versus Belt was already 31 years old. Gray is now 54 years old, and even in 1966, the court specifically noting Lamb versus Belt referred to it as an earlier decision. The court's point in doing that was to describe effectively a new world order where the rules were changing, and two things changed. The first thing that changed in Gray, which is why it is a seminal case, literally dozens of articles, and why it's been adopted by virtually every state in the United States, virtually every state, changed the trigger so that in the old days, the old days being Lamb versus Belt, one was only at the face of the third. Mr. Ford? Yes, ma'am. Mr. Ford, I'm sorry to interrupt you, but I'm still having a hard time hearing you. You're cutting in and out. I am. I think staying closer to the microphone would help if you can. Certainly. Is it up here? This is Kwame. The audio problem, I think, is we're getting a little bit of feedback from Judge Paez's connection. Judge Paez, do you see the mute button on your microphone? If you can mute your microphone when you're not speaking, that would help us out, I think. Okay. Okay. Great. Thank you, sir. All right. Okay. So, Mr. Ford, as I understand your argument to this point, you are explaining to us the evolution of California insurance law, and you started out by saying that this is an issue of first impression, which would suggest that the California Supreme Court has not yet addressed it. And so, what I believe would have revealed in the California case law is some pretty clear pronouncements that if an insurer does not defend, breaches the obligation to defend, and the insured goes through a trial and recovers a judgment, the insurer can still dispute coverage, that they are not bound by that judgment except as to what was decided in that judgment, which would be the insured's liability and the amount. But coverage hasn't been disputed or decided at that point. And what you're suggesting is that a settlement is somehow different. And so, if an insurer fails to defend and the insured enters a settlement, then that expands coverage, that the insured loses, or rather the insurer loses any ability to defend itself on coverage. And that does not seem consistent with the language of Lamb, or Gettys, or Hogan, or Buss, or the other cases that are cited in the party's briefs. None of them say that. None of them say that the insured has carte blanche to determine the scope of coverage by entering a settlement. So, rather than like a recitation of the history of California law, what I'd really like to hear is why that should be the law, and what specific authority supports your proposition that now the insurer has no defenses on coverage, simply because the insured decided to settle. Yes, Your Honor. Let me go directly to your question. I would ask the court to picture two boxes. And the box to the left, so to speak, would be Hogan, the Hogan rule, the rule you just referred to. There has been a breach of the duty to defend. There has been a judgment. And there is an action either by the insured or by the third party assignee under 11-580. In that situation, what are we doing? We're applying collateral estoppel. In other words, we're looking at the judgment. We're saying, are there express or implied findings when one analytically marries that to the policy that would lead to coverage? But doesn't that make your position worse? That seems to undercut your position. There's a couple issues I have with your argument. The first is that you did not raise it in your opening brief. And if you want to hang your hat on collateral estoppel, and that there's a distinction between a settlement and a judgment for those purposes, I think it should have been argued in your brief. The second is that that brings in Isaacson. So what it means is that there's no judgment for a basis for collateral estoppel, which means that there's only a presumption that the insured is liable and for the amount of settlement, not that there's coverage. So I don't know how collateral estoppel gets you coverage, particularly with the language in BUS and other California cases that a settlement is a resolution of liability. It's money paid. So those are my concerns. So if you could address that, that would be helpful. Sure. I didn't get to the second box. The other box, the one box would be collateral estoppel, and that's where there is a claim on the judgment. The other box would be and Isaacson and Prune and all those cases where you have a breach followed by a settlement. In those situations, because there's no judgment, there's nothing to indemnify. The indemnity standard can't apply because as Justice Mosk explained in certain underwriters, the duty of indemnity only applies when to order of a court to pay money and never otherwise. But that's also a distinguishable case because that was in the context of an administrative ruling as opposed to a judgment. So I don't know that that case gets you quite as far as you're suggesting. I think, Your Honor, with due respect, one of the important parts of certain tried to argue that they pointed to Isaacson and Lamb, as the court would recall, and they said, hey, what about this? This is an indemnity coverage. And Justice Mosk said, no, it isn't. That's a damage claim. And as he stated, Lamb and Isaacson at most stand for the duty to defend. But on Gray, I think that I would like to really point out, not as a history review of coverage law, but to extract what's important in there. The court articulated what is the effect of a breach of the duty to defend. That hadn't really been done before. And in Gray, as the insurers were arguing, we're not bound by this judgment. And they specifically argued collateral estoppel. And the California Supreme Court said, we don't care about coverage. There was a breach. Here you have an unclear judgment. And the carrier, therefore, liable, was put on to that judge. Now, the certain underwriters came. Let me go also to Buss very quickly. And to a certain extent, we, as the court may recall from Buss, there were 27 causes of action pleaded. Only one, I think it was number 23, pardon me, was a defamation claim that was potentially covered. The rule that emerged out of that case was that the insurers had the right to seek reimbursement for the defense of claims that were never even potentially covered, to use the particular vocabulary. And so the key to the analysis, we think, is that there was a duty to defend claims that were contractually covered. And there was an implied in law duty to defend the claims that were potentially covered. Now, applying Buss, two large points come to mind. Number one, carriers' rights to reimbursement only follow performance. They never follow breach of the duty to defend. In other words, a non-defending insurer didn't reserve rights by hypothesis, didn't defend, and therefore doesn't have a parking space to disclaim a breach. The other large point is that it is impossible to believe that the California Supreme Court would embrace a rule where only matters that were potentially contractually covered would come into play. Because upon breach of the duty to defend, two duties were breached, the contractual duty and the implied in law duty. What was not defended was the entire suit. What was settled was the entire suit. And then, Your Honor, in terms of this whole collateral estoppel, it was raised by the insurance carriers, and we certainly had to respond to the argument. But we did so to distinguish those cases. In other words, as we point out in our briefs, there really are four common threads. I think this is important. There are four common threads that run through any collateral estoppel argument and through their defense. Mr. Ford, your time is running out. Yes, Your Honor. You wanted to save some time for rebuttal, right? Yes, Your Honor. Okay, why don't we hear from you at the other side, and I'll give you two minutes for rebuttal on when they finish. Very good. Thank you, Your Honor. Let's see. Mr. Holden is going to go first. Yes, Your Honor. Good morning, Your Honors. May it please the court, I'm Robert Olson on behalf of the Appellee Endurance Insurance. I want to start out with what's common ground here, what's not in dispute. What's not in dispute is that Dermott here is seeking nothing for defense. What's not in dispute is that zero dollars of this settlement were for covered damages. What's not in dispute is the Hogan Getty's line of authority as to a carrier after a judgment is only liable for covered damages. What's not in dispute is if Lamb is still good law, the summary judgment was properly entered. What we have is a narrow issue, which counsel describes as a matter of first impression. That is, through creative lawyering, he's trying to change what California law has been since Lamb. And Lamb is not an isolated case there. The district court properly, and this is ER 53 to 55, traces the history of Lamb, the history of California law from Lamb to Hogan, which cites and relies on Lamb, through Pruin. I think Pruin is an important case because, A, it quotes the relevant part of Lamb. And Pruin is authored by the late Justice Walter Krosky, who in California was the leading scholar on California insurance law. He, in fact, actually wrote the book. He wrote the Rudder Insurance Coverage Guide, which is the standard reference in California for insurance law. We cite to that at our brief, page 24. And he cites Lamb there, and he says the Lamb rule is still the rule. Not only does he cite the Lamb rule there as still the rule, as it's quoted again in Pruin, he cites the Saraceno case. And in Saraceno, it says, the stipulation of the third party action, that is a stipulated judgment to settle a case, exactly what plaintiff here is claiming, creates coverage, might bind farmers, the carrier, for failure to fend if there is coverage. But that judgment determined Saraceno's liability only, not coverage. That's a California Court of Appeal case, well, you know, 50 years after Lamb, saying this is still the rule. It is the rule, and plaintiff is trying to change that rule. So what does he put together to try to change that rule? He claims Hogan is a collateral estoppel case. That's very interesting because if you look at page 566 of the Hogan decision, the court says that the issues in the underlying case there did not determine coverage, didn't determine coverage whatsoever. One way or the other, Hogan can't be a collateral estoppel case when the Supreme Court says that the underlying case didn't determine coverage. The other thing that's important, Hogan, at the same page, 566, it reads the Supreme Court's prior gray case. So this is the Supreme Court interpreting the gray case the counsel is relying on. And what does the Supreme Court say? It says what gray holds is if it's unclear whether the result in an undefended action is covered or not covered, it's the carrier's burden to prove how much is not covered. Well, the carrier here undertook and proved that and undertook that burden and satisfied it to prove that it's all uncovered. The carrier endurance here did what Hogan reads gray as requiring it to do. I think another important case to keep in mind is... So counsel, let me interrupt you. If we agreed with your assessment of California law, that raises some interesting policy questions. What is there to prevent insurers from failing to defend, from breaching their duty to defend? There's a potential bad faith claim, but not all breaches are going to be a bad faith failure to defend. And then you would have the circumstance where presumably many insureds would not settle or pursue the case. And so then the insurer would simply not only have saved the cost of the defense, but not pay anything. I mean, how is this equitable? I think it is very dangerous for a carrier in California not to defend for several reasons. To begin with, they lose all control of the defense of the case. They lose control of the defense. They lose control of the settlement. That means the insured can go ahead and settle the case without carrier consent. They can do everything they want to shape that case for a settlement that is covered. And as long as it's non-collusive and reasonable in amount, the carrier is going to be bound to it. The perfect example is the Isaacson case, where the carrier didn't want to pay more than $400,000 to settle the case. The insured wanted to settle it for $500,000. Because the carrier was defending, the Supreme Court said, no, you got to play out your cards. Insured, you can't settle and get that extra $100,000. If the carrier had not defended in Isaacson, the insured would have been free to settle for $500,000. That would have been a bound by it. The only thing the carrier doesn't lose, the difference between not defending and when you do lose coverage, is by not defending, you don't lose coverage. You don't lose your coverage defenses. You lose those coverage defenses if you also fail to accept a reasonable settlement offer. And there's a reasonable settlement offer and you don't accept it. Then you lose coverage. No claim of a reasonable settlement offer here. And that is the distinction that the Supreme Court makes in commonality. In commonality, it says the failure to defend gives you defense costs and implicitly any covered damages that may result. Commonality says, but if you fail to accept a reasonable settlement offer, now you're on the hook for coverage. Now you're on the hook for non-covered amounts other than the later PPG case says punitive damages. Under plaintiff's theory here, if you settle, the carrier is liable for punitive damages, uninsurable damages under insurance code section 533, which PPG says, if it goes to judgment, you're not liable for. But plaintiff's construct would eliminate the distinction that commonality makes between the consequences of failure to defend and the consequences of a failure to settle. I see my time has run unless the court has further questions. I would ask the court to affirm the district court's reasoned decision applying established California law. Okay. Mr. Holden, I believe. Yes. Good morning, your honors. I'd like to address some of the arguments that Mr. Dermott made in his reply brief that we have not yet had the chance to respond to. One case that we cited that Mr. Dermott addressed was the Tradewinds escrow case, where Mr. Dermott argued that Tradewinds had no reason to determine whether an insurer had a duty to defend because another insurer did defend, but there were no damages. But if Dermott's position were correct, a post-breach settlement is recoverable, even if it's clearly uncovered. There would have been a very good reason for the Tradewinds courts to determine whether the insurer had a breach because that would have led to coverage. Instead, what the court did was said where the insured settles the underlying claim, we must also consider the issue of the duty to indemnify, because if it turns out the policy covers the claim, the amount of reasonable good faith settlement payments made by the insured are recoverable. That's at page 712 of the Tradewinds escrow case cited. The court distinguished that, carefully distinguished it from the duty to defend because he said we're not concerned with the potential for coverage as we would be if it were a duty to defend issue, but whether the language of the policy actually supports coverage. And the only argument that Dermott had about the Tradewinds escrow case was that the insurer there was not found to have breached the duty to defend because there were no damages. Well, that's exactly the case here. If you get right down to it, they're not seeking any defense costs. All they're seeking is a settlement. So it's the same as the Tradewinds where there's no damages for the breach of duty and if there was one. The Shell oil case, Dermott says Shell focused on coverage for willful acts. In fact, that issue took up only four pages out of a 55 page opinion. Dermott says Shell did not address the duty to defend, but it did address the Isakson presumptions which arise not only when a breach of duty to defend, but where an insurer denies coverage outright. The Isakson presumptions arise as well. And Shell directly addressed the Isakson presumptions and said the insured has the initial burden even after the insured has settled the case and the Isakson presumptions come into play because the insured denied coverage. The insured has the initial burden of showing that its claim is within the policy's basic coverage. The burden of proof then shifts to the insurers so that other policy might be excluded all apart. That's after a settlement and that's after the insurers allegedly breached by denying coverage and the Isakson presumptions came into play. The court makes it very clear that the settlement establishes a presumption of the insured's liability for the underlying claim. It does not establish a presumption, let alone a conclusive presumption, that the claim was covered. Mr. Holton, I'd like to hear your take on what happens. What are the consequences for an insurer if they wrongfully fail to defend? I've heard Mr. Olson's explanation and I believe Mr. Ford's. So they could be liable for bad faith, which would then allow the insured to recover damages. They could be required to reimburse or pay the cost of defense if the insured incurred any such cost, which everyone says didn't happen here. Mr. Olson notes they lose control of the litigation. But what else? I mean, what incentive does this ruling have, would this rule have to have insurers honor their duty to defend? I agree with Mr. Olson that it would take the control of the defense away from the insurer to the extent there is actually anything in the case that is covered or potentially covered, then that could really come back to the insurer if it has refused to defend because if it's found to be in bad faith and there's a default judgment as discussed in the papers as in the Amato case, then the insurer can be liable for the default judgment as an element of damages for the bad faith in refusing to defend. Otherwise, there's certainly punitive damages that are at risk and the refusal to defend when there's not a valid reason to defend and this bad faith is something that could well lead to punitive damages. I can tell you from my experience working with insurers for decades, they're very well aware of the risks of bad faith claims being made and want to be very careful to do whatever they are in fact required to do under the policy to ensure they don't get into a bad faith situation. But in this case, the insurers, or at least insurance, I don't think Burlington made this argument, say there's no bad faith because there's no damages. There's no economic damages because of the assignment. In other words, because the insured isn't obligated to pay this settlement, there are no damages, which then undercuts the bad faith claim, which just seems to be another way for the insured not to provide a defense and not have liability. Well, this was a unique case in that the insured entered into an agreement to settle before the case was even tendered to the insurers. And it was part of that agreement that the insured would face no liability if the insurers did not defend. So in other words, the insurers in this case refused, in bad faith, refused to defend. The insureds were not facing any liability from that or facing no damages from that because the settlement agreement they had already entered into before it was even tendered to the insurers protected them from any such liability. And that's why this is a unique case and why the court on the previous appeal, the panel held that there was no bad faith liability for Burlington in the manner in which it defended the case because the insured had already been protected from having liability for that by virtue of the earlier pre-settlement, if you will. I'd see my time is just about out. In fact, are there any other questions I'd be happy to answer? I don't think so. Okay. Thank you. Thank you all very much. All right. Well, Mr. Ford, I'll have the clerk put two minutes on the clock for you. Thank you, your honor. Let me address some of the points that Mr. Olson made. He started out by saying that Hogan was not a collateral estoppel case. And with all due respect to my friend, to read the case is to instantly conclude it was a collateral estoppel case. It was nothing else. The court went to the law of judgments and cited it and quoted it. The vocabulary bound by a judgment, facts necessarily adjudicated. All of that is what we all learned in law school. That's the law of res judicata, collateral estoppel, the law of judgments. And so what did you have in Hogan? You had a mixed judgment. Parts covered, part isn't covered. The saw cut the logs too narrow. That's not an accident. That's not covered, etc. So it's a perfect application of collateral estoppel. As far as the expressed admiration for Justice Kroski, I certainly share that and I would double down on that. He was not a jurist known for throwing words around lightly. And if you read Prune, and I'm sure that Mr. Olson read Prune, at page 512, 514, 516, 522, he makes the point over and over that we're talking about a direct action under 1158. Couldn't be more clear. In terms of the Gray saying the coverage was still open, Gray said the opposite. It said coverage is closed. This unclear judgment where we can't tell is it covered or not covered, that's an unclear judgment. We can't apply collateral estoppel. But the court didn't stop there. The court went on to say the matter of policy, we're not going to apply collateral estoppel. And then there was a somebody, I think Mr. Olson threw away that there was intentional conduct, willful conduct, and so forth and so on. For many, many years, it's been the law in California, you have to defend. It doesn't mean there's indignity, it just means there's a duty to defend. All right. Thank you, Mr. Fork. We appreciate your arguments this morning, counsel, and the matter submitted. Thank you. Thank you, your honors. Let's take a few minute break while we tee up the next case.
judges: Paez, Melgren, Bade